HARDY, Judge.
Plaintiff brought this suit for damages in the principal amount of $1,051.71 al-" legedly resulting from breach of contract by defendant, and he appeals from judgment rejecting his demands.
Most of the relevant facts have been established without substantial dispute. Plaintiff procured a contract for the fur-' nishing and installation of air-conditioning and heating equipment in the Airmen’s Service Club at the England Air Force Base in Alexandria, and the uncontradicted testimony of plaintiff established the fact that work of this nature under government contracts requires submission of rating or specification sheets for the purpose of determination from published data sheets of' manufacturers of the supplier’s equipment' that it will meet the requirement standards' or capacities called for by the plans and specifications; that this is a usual, customary and very rigid rule from which there is no departure and is well known to and accepted by the trade. On the basis of information transmitted to defendant in a telephone conversation with an unidentified individual, apparently employed by plaintiff as an engineer, the defendant submitted a proposal for the furnishing of equipment specified therein, under date of August 14, 1958. After some adjustments plaintiff and, defendant reached an agreement as to the equipment to be furnished and the price-therefor, which agreement was confirmed-by plaintiff’s purchase order dated September 23, 1958, duly received by defendant, which order bore stamped notifications, material and relevant to this controversy, as follows:
“This order is subject to the approval and acceptance of the architects and engineers.”
* * * * * 9ft
“To expedite this order sent 8 copies of submittal data.”
The price' agreed upon to be paid by defendant amounted to $8,078.98. After' *524 numerous requests defendant eventually furnished submittal data on the equipment covered by the purchase order and by communication dated November 5, 1958, was notified by plaintiff that certain specified items of equipment had been disapproved, requests being made for immediate submission of equipment acceptable to the engineers, together with ten copies of submittal data. Again after several months delay, defendant, under date of February 9, 1959, transmitted submittal data covering equipment at an increased price. The record contains a number of additional communications between the parties and their counsel with reference to demands and counter-demands, culminating in a refusal by defendant to supply approved equipment for the price originally agreed upon. As a result of this alleged default on the part of defendant plaintiff was required to purchase, on the open market, the necessary equipment required under his contract at a cost of $9,130.68, representing an expenditure of $1,051.70 over and above the amount of the original contract with defendant.
The defense to plaintiff’s claim rests upon the contention that plaintiff has failed to prove a contract, inasmuch as his acceptance of defendant’s offer was conditioned upon the approval and acceptance of the Corps of Engineers and the architects and engineers. It is urged that this language clearly indicated that plaintiff had no intention of being bound by any agreement unless the equipment was accepted by the said authorities. Upon the basis of Articles 1805 and 1806 of the LSA-Civil Code, it is argued that the condition or limitation referred to permitted the withdrawal of defendant’s offer to furnish the equipment.
Our examination of the codal articles does not disclose justification for the construction contended. When defendant accepted plaintiff’s purchase order subject to the specific conditions noted thereon, we think he was bound by a definite and fully understood contractual agreement. This conclusion is supported, in our opinion, by the testimony of both plaintiff and defendant. The former corroborated the explicit provision of the purchase order requiring conformity with plans and specifications, and, further established the fact that the equipment tendered by defendant did not meet such plans and specifications. The defendant, while testifying that he had never examined the plans and specifications and that his proposal was made solely upon the basis of information furnished in the telephone conversation to which reference is made, supra, did not deny his understanding of the necessity for conformity to specifications. Further careful examination of defendant’s testimony indicates his own uncertainty as to the existence of a subsequent oral agreement with plaintiff to supply acceptable equipment, and we quote the following extract:
“Q. Did you ever, as Mr. Walker has testified, offer the higher priced equipment at the lower price ? A. Not that I recall, sir. There has occurred in the past — this being quite a few months ago — I do not recall that I did; no, sir. If I subsequently — assuming that his statement were true, if I subsequently stated that I had to have more money, I do not think that I did.
“Q. In other words, you put nothing in writing that you offered the more expensive equipment for the lower— A. The only thing that I can recall putting in writing is that I had to have more money.
“Q. Do you ever intentionally take a loss on your equipment? A. We try not to. No, sir; not intentionally.” (Emphasis supplied.)
We think it is pertinent to observe that defendant refused to testify positively as to any oral commitment and was certain only of the fact that he had put nothing in writing.
*525 On the facts as above delineated we think it is entirely reasonable to summarize our conclusions that (1) defendant’s acceptance of plaintiff’s purchase order required compliance with plans and specifications and was subject to the approval of the Corps of Engineers, all of which was well understood by and agreed to by both parties; (2) that defendant’s default was due entirely to his refusal to comply with the conditions to which he had agreed and by which he was bound.
In brief of counsel for defendant is cited the case of Vordenbaumen v. Gray, La.App., 189 So. 342, 347, in support of the contention that conditional acceptance is subject to withdrawal. We not only disagree with the conclusion that this case supports defendant’s position, but, on the contrary, we think it is exceptionally strong authority for plaintiff’s position. The opinion of the court construing Article 1806 in conjunction with Article 1805 observed that :
“ * * * an acceptance burdened with some condition that was not included in the original offer constitutes a new offer that might be accepted or rejected by the original offeror as he sees fit.” (Emphasis supplied.)
In the instant case it is abundantly established that the original proposal and acceptance was burdened with a condition thoroughly understood and accepted by both parties, and, accordingly, there was no “new offer” involved.
The same interpretation was given by the court in International Paper Company v. Rivers, La.App., 35 So.2d 677, also cited by counsel for defendant.
Having reached the conclusion that defendant defaulted in performance of a binding contract, the only question which remains is the measure of damages. No contention is made as to the proposition that the measure of damages in the instant case is represented by the increased price of the equipment which plaintiff was required to pay on the open market in excess of the amount of the proposal made by defendant.
The amount actually expended by plaintiff, conclusively established by the record, is the sum of $9,130.68. The proposal made by defendant, as finally adjusted and evidenced by the purchase order, amounted to $8,078.98. The difference therefore is fixed as being $1,051.70, to which plaintiff is entitled to judgment.
For the reasons assigned the judgment appealed from is annulled, reversed and set aside, and
It Is Now Ordered, Adjudged and Decreed that there be judgment in favor of plaintiff, James L. Walker, and against the defendant, Air-Conditioning Distributors, Inc., in the full sum of One Thousand and Fifty-one Dollars and Seventy cents ($1,-051.70), together with legal interest from date of judicial demand until paid, and for all costs of both courts.