138 So.2d 7

James L. WALKER

v.

AIR CONDITIONING DISTRIBUTORS, INC.

No. 45822.

Feb. 19, 1962.

Goode & Dietz, Shreveport, for relator.

Lamar Polk of Polk, Foote & Neblett, Alexandria, for respondent.

HAMITER, Justice.

James L. Walker, a heating and air conditioning contractor, instituted this suit to recover damages in the sum of $1051.70 from Air Conditioning Distributors, Inc., a wholesale dealer in commercial heating and air conditioning units.

Plaintiff alleged that the claimed damages arose out of the failure of defendant to furnish certain equipment in accordance with the terms of a binding agreement that existed between them. Defendant denied that it was obligated under the purported contract.

The district court dismissed the suit after a trial of its merits. On an appeal the Court of Appeal of the Second Circuit reversed the judgment and awarded damages to plaintiff in accordance with his prayer. See 131 So.2d 523. We granted certiorari,

The record discloses that on August 14, 1958, in furtherance of his intention to bid on a heating and air conditioning project planned by the federal government for England Air Force Base near the City of

Alexandria in Rapides Parish, the plaintiff, through an employee, telephoned long distance to defendant's president, Winton M. Hungerford, and requested prices on several described items. (Plaintiff has neither admitted nor denied this conversation, hereinafter more fully discussed; however, Hungerford testified that it occurred, and there is no other explanation for the commencement of the negotiations had between the parties. Moreover, both the district court and the Court of Appeal found as a fact that it took place.)

On the same date Hungerford, in response to such request and pursuant to the data given to him over the telephone (he was not then fully informed as to the plans and specifications of the proposed government contract, and admittedly he was never furnished with a copy thereof), prepared and forwarded to plaintiff a written quotation of prices respecting the items about which inquiry was made, they consisting of two air handling units, two heating units, a direct drive condensing unit, and five fans. The total price quoted was $9059.40; and the document made no mention of any plans and specifications or of a required government approval of the equipment.

On August 26, 1958 the government contract was let, plaintiff being the successful bidder. And after some telephone negotiations had with Hungerford (the exact nature of which is not disclosed) plaintiff, on September 23, 1958, sent to the defendant a purchase order for the items listed in the quotation of August 14, 1958, less the five fans, the total amount shown therefor being $7990.20. This order was written in pencil, and accompanying the description of each unit was the notation "to meet plans and specs." Also, plainly stamped with ink across its face was the following: "NOTICE This order is subject to the approval and acceptance of the architects and engineers. To expedite this order send 8 copies of submittal data." Too, the letter transmitting the order stated in part: "We are enclosing our purchase order for the air handling units, condenser and heating units on the above job, subject to the approval and acceptance of the Corps of Engineers. Please expedite eight (8) copies of submittal data on this equipment immediately."

On receipt of such letter and purchase order the defendant wrote plaintiff that it would sell to him the items originally offered, less the fans, for the sum of $8078.-98 (again, defendant made no mention of any plans, specifications or government approval). Replying in writing, under date of September 25, 1958, plaintiff stated that we are accepting the quotation in the mentioned amount "and are revising our purchase order to read same."

After plaintiff received from defendant the requested submittal data (the manufac-

turer's detailed ratings on the offered units) the units proposed to be sold were rejected as being insufficient to meet the government's minimum capacity requirements under the contract. (It appears that some were disapproved by the government engineers and others by the plaintiff himself, he having had a copy of the contract's plans and specifications.) Whereupon, the defendant offered to provide larger equipment to meet such requirements but at a total price slightly higher than that previously quoted. Plaintiff rejected the offer, he objecting to the additional cost.

When defendant refused to deliver the larger equipment unless plaintiff agreed to such increase in price the latter (in order to perform his government contract) purchased the needed items elsewhere at a total cost of $9130.68. Thereafter, he filed the instant suit in which he seeks to recover as damages the difference between the amount so paid by him and defendant's quoted price of $8078.98, or $1051.71.

It is the contention of plaintiff, to quote from the brief of his counsel, that " * * * on September 25, 1958, the defendant had offered to sell and deliver to the plaintiff who had agreed to buy for the stipulated sum of $8,078.98, two air-handling units, two air-heating units and one direct drive condensing unit, *all of which were to be such as to meet the requirements of the government plans and specifications for equipment to be installed by plaintiff in the Airmen's Service Club under his contract with the Government*. So as of that date a firm and binding agreement had been reached between plaintiff and defendant providing for the sale and purchase of this equipment for that price." (Italics ours)

Defendant, on the other hand, maintains that no such agreement was confected. It urges that its proposal was to sell certain specified equipment to comply with the data given to Hungerford over the telephone on August 14, 1958; that the items listed in the written quotation fully complied therewith; and that it did not at any time propose or agree, as plaintiff contends, to furnish at a fixed price whatever equipment was needed to meet the requirements of the government contract. Its counsel then argue that plaintiff's purchase order of September 25, 1958 (as revised) amounted to no more than a conditional acceptance of the original proposal to sell (i. e. plaintiff would purchase the offered equipment *if and when* approved by the government architects and engineers) and that, since the condition was not fulfilled, defendant had the right to withdraw the offer (as it did) under the authority of Revised Civil Code Article 1805 which reads: "The acceptance to form a contract must be in all things comformable to the offer; any condition or limitation contained in the acceptance of that which formed the matter of the offer, gives him, who makes the offer, the right to withdraw it."

Defendant's position, in our opinion, is supported by the evidence adduced and by the applicable law. The testimony of Hungerford is clear, emphatic, and convincing that on August 14, 1958 the long distance telephone call referred to above (from plaintiff's office in Pineville to defendant's in Shreveport) was received by him; and that the gentleman calling " * * * stated that Mr. Walker was out of town and that he—I do not recall the man's name—but he was the estimator and engineer for Mr. Walker's contracting firm and read some specifications over the 'phone, saying that he was in a hurry and could I price him equipment based on that; and I did. And that was the result; that caused the proposal."

Hungerford further said that he wrote down such specifications as they were being received over the telephone (his work sheet was introduced into evidence) and, based solely thereon, immediately gave the caller the requested prices orally. On the same day they were confirmed by the written quotation that was mailed to plaintiff. He conceded that the equipment proposed to be furnished did not comply with the demands of the government engineers respecting minimum capacity, about which he learned only after its disapproval; but he insisted that it fully met all of the requirements contained in the data given him by plaintiff's employee.

 Plaintiff, as we have previously indicated, neither admitted nor denied the occurrence of the telephone conversation or the details thereof; whereas, Hungerford's above discussed testimony was direct and positive, and his credibility was unassailed. Of course, plaintiff might have sought to rebut that testimony by calling as a witness the estimator and engineer who assertedly requested the quotation of prices from Hungerford (undoubtedly he knew who aided in the preparation of the bid for the government contract). But he failed to produce the employee; nor did he offer any explanation regarding the failure. Under these circumstances we may assume that the employee's testimony would have been detrimental to the cause of plaintiff and favorable to that of the defendant.

Moreover, as heretofore pointed out, plaintiff admitted that the defendant was never furnished a copy of the plans and specifications in question. And nowhere in his testimony did he suggest that in some of the oral negotiations with Hungerford the latter agreed to provide equipment which would meet all of the requirements of the government contract and, hence, warranted that the items set forth in the initial proposal would comply therewith. Rather, in substantiation of his above quoted contention he relies on the written documents introduced into evidence, including correspondence; on Hungerford's knowledge that the equipment proposed to be sold was

for use in connection with a government contract; and on the latter's familiarity with the usual condition in contracts of that nature that the needed items must be approved by the Corps of Engineers.

▅▅▅ We do not find anything in the documentary evidence relied on which can be considered as constituting a warranty on defendant's part that the equipment offered for sale would comply with the government specifications. The most that can be said is that such evidence discloses, as the defendant urges, an acceptance of the proposal to sell that was subject to the approval of the Corps of Engineers—an acceptance binding on plaintiff only if and when the engineers approved the equipment. Nor do we believe that Hungerford's knowledge that the items proposed to be sold were for use in connection with a government contract, together with his awareness that contracts of that kind require the engineer's approval of all materials used, has any effect on the result to be reached herein. Such knowledge and awareness alone, without an assurance that the government specifications would be fully met by the equipment offered, could not create the warranty contended for by plaintiff.

▅▅▅ We do not (and need not) determine here whether either plaintiff or defendant could enforce specific performance of the purported contract attempted to be confected by these parties. Our conclusion is only that this action for damages cannot succeed under the codal law and jurisprudence of this state in view of plaintiff's conditional acceptance of the proposal to sell; of the above mentioned disapproval of the items covered thereby; and of the absence of an expressed or implied warranty on defendant's part that the offered equipment would comply with the government specifications.

▅▅▅ Incidentally, it may be well to state that in oral argument to this court counsel for plaintiff sought to make the point (one not briefed here or in the Court of Appeal) that the equipment which defendant proposed to sell lacked the capacities attributed to it and described in the original quotation. The Court of Appeal failed to discuss this question of fact, apparently because attention was not directed thereto. However, the district judge considered it and specifically noted: "The evidence does not show that the equipment defendant proposed to furnish did not have the capacity stated on the proposals." And, after our study of the submitted transcript, we are satisfied that such question was correctly so resolved by him.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside and that of the district court is reinstated and made the judgment of this court. All costs of this litigation shall be paid by the plaintiff.