JOHNSON, Judge.
The plaintiff, Pyro Incinerator & Supply Corp. (we will call it Pyro), a mechanical contractor, domiciled and doing business in Mineóla, Long Island, New York, and plaintiff, Pierre E. Bagur, Jr., (we will call him Bagur), a manufacturer’s representative, individually domiciled and doing business in New Orleans, have appealed from the judgment of the Civil District Court for the Parish of Orleans dismissing their suit brought against defendant, Gervais F. Favrot Co., Inc., (we will call it Favrot), to recover certain amounts for alleged contract violations.
Plaintiffs allege that Pyro had an oral agreement with defendant, whereby Pyro would submit a bid to Favrot for a subcontract for the construction of a phase or item of a refuse incinerator to be built in New Orleans, conditioned that if Pyro’s bid be low Favrot would use the bid in Favrot’s bid for the general contract and in turn would award the subcontract for that particular phase or item to Pyro, if Favrot were awarded the general contract. Favrot admits that it agreed to use Pyro’s bid if it were low for that phase of the work but Favrot denied that it had any binding agreement to award the subcontract to Pyro, though the Favrot witnesses testified that Favrot had in mind to award the subcontract to Pyro if Favrot got the contract to build the facility. The city awarded the general contract to Favrot but upon being informed that Favrot intended to give the subcontract to Pyro for the particular phase on which Pyro made its bid to Favrot the city refused to approve Pyro as a subcontractor and Pyro did not get the subcontract which it wanted and expected, for the reason that Favrot could not appoint a subcontractor not approved by the city. Pyro alleges and its witnesses testified that the oral agreement between Pyro and Favrot amounted to a joint venture, which Pyro asserts Favrot violated and Pyro claims payment of its anticipated profit, expenses, compensation for experience and for assistance and services Pyro claims it rendered to Favrot in the preparation of Favrot’s general contract bid.
The City of New Orleans desiring to construct a 400 ton refuse incinerator advertised for bids. Knowing that one of his clients, Pyro, specialized in that type of construction, and knowing that Favrot was a well-established general contractor in New Orleans who would bid for that construction, Bagur contacted Favrot to find out if Favrot would be interested in receiving a subcontract bid on certain items of the facility to be constructed. Favrot informed him that it would be interested to receive such a bid.
The city called for bids in accordance with the specifications prepared by its engineers. The city furnished to bidders forms showing that six specific items (sometimes called phases) of the work should be figured separately. Item 3 included the incinerator furnaces and other specified attachments and parts. Favrot went about preparing a bid on each item separately and also a bid for the general contract which included certain combined items, which combination was designated as item 5.
After Bagur had contacted the Favrot firm, Dan Schwartz, a mechanical engineer and President of Pyro, came to New Orleans from New York and put up at the St. Charles Hotel. He contacted Gervais F. Favrot, then president, Jack W. Wilson, vice president and other members of Favrot and they offered him a desk and the use of the telephone in their office for his convenience in assembling a bid for Favrot to subcontract item 3 of the construction. Mr. Schwartz said he brought an adding *358 machine and other equipment to the hotel and did work in the preparation of the bid both in his hotel room and in the Fav-rot office.
Pyro was not licensed to do business in Louisiana and it could not submit a bid direct to the city in its own name. Mr. Schwartz testified that he made an agreement with Favrot whereby Pyro and Favrot were to work together in the preparation of their respective bids and particularly that Pyro' would assist Favrot by checking and analyzing the various bids, proposals and prices submitted to Favrot, it being understood as already stated that Favrot would use Pyro’s bid if it were lower than others who might bid on item 3. It was lower and Favrot did include it in the Favrot bid for the general contract. Mr. Schwartz further said that the reason Fav-rot wanted and needed Pyro’s assistance was that Favrot had never built a unit of this kind, whereas Pyro' was experienced and specialized in the installation and construction of this very type of utility. He said further that this agreement was exclusive with Favrot. Pyro made no other bid to any other bidder.
Plaintiffs’ contention that Favrot wanted and needed Pyro’s assistance in assembling Favrot’s bid on this job because the subject was entirely foreign to1 Favrot, it never having bid on this type of work, and that Favrot used that assistance as a consideration for the agreement, is not at all impressive and is denied by Favrot’s witnesses. Favrot has been in the general contracting business in New Orleans for forty-seven years. Its volume of business is shown to be some $15,000,000.00 per year. Moreover, it is significant to note that Pyro must have known that Favrot did not have the last word in awarding subcontracts. Pyro wrote Favrot on January 15, 1960, (D-3) to say that it understood that the general contract had been awarded to Favrot and “ * * * we certainly hope that we are still in the picture with you.” This is not the language one who knows he has a contract would use.
Plaintiff Bagur was Pyro’s only supporting witness. Bagur does not seek to recover anything for himself by this suit and it never was made quite clear just why Bagur was joined as a party plaintiff, unless, as a resident of Louisiana, it was for the imaginary purpose of attempting to give some life to the suit in the face of the fact that it was apparent there would be some controversy over the procedural capacity of Pyro to make a judicial demand and stand in judgment. Of course, Bagur may have had a claim for some commission against his client, Pyro, but with that we are not here concerned.
Mr. J. W. Wilson was at that time Vice President of Favrot. He is now the president. The gist of his testimony is that Mr. Schwartz, for Pyro, came to- the Fav-rot office and said that Pyro wanted to bid on the item 3 portion of the job, and Schwartz was told that Favrot would accept a proposal with the understanding that if Pyro’s bid were low, Favrot would use the bid but Favrot reserved the right to receive bids from others and if any other were lower, Favrot would accept it. Fav-rot received other bids on item 3 but Pyro’s bid was low and Favrot did include it in Favrot’s general contract bid. This witness explained that there was no guarantee given Pyro beyond that. Plibrico also made a bid direct to the city on item 3 which was lower than Plibrico’s bid to1 Favrot on that item. Mr. Wilson was asked as to whether Mr. Schwartz assisted Favrot in preparing the Favrot general contract bid and Mr. Wilson answered: “I do- not know whether he assisted in any way at all. There’s nothing he would have done that we wouldn’t have done without him if he had not been there.” Mr. Wilson was also' asked if Mr. Schwartz did not agree with Mr. Wilson that Pyro- would not submit bids to any other bidder on item 3. Mr. Wilson said: “They didn’t agree with us. They told us they were *359 going to bid only to us. We didn’t make them make that stipulation. They said: ‘This is what we are going to do.’ ” He was asked whether he agreed with Mr. Bagur or Mr. Schwartz that his company was to “sink or swim together, * * * ” with Pyro, and he answered: “Positively not.”
Mr. Gervais F. Favrot was then President and is now Chairman of the Board of Favrot. Mr. Favrot was asked if he made an agreement with Mr. Bagur or Mr. Schwartz that Favrot would work exclusively with them on the incinerator furnace part of this job and he answered: “Positively not.” Mr. Favrot said he did tell Mr. Schwartz: “If you are low bidders, we will help you be low. If you are low and help us we will give you the business.” He further said that in working on these bids he fully intended to give the subcontract to Pyro and that he wanted and tried to do so but he could not do it and get the general contract under item 5 for Favrot. When Mr. Favrot said he intended to give the subcontract to Pyro, we do not understand that he was confirming as a fact the unqualified existence of a synallagmatic or bilateral contract with Pyro. He was voicing only his private intentions, subject, of course, to the city’s approval. He was asked if there were any custom in the construction industry to make a payment to a subcontract bidder if the subcontract is not awarded to the bidder and he answered : “I never did it in 47 years, * * * ” and that he did not make any arrangement with Pyro to pay them anything under this circumstance. At another point he was asked if in his arrangement with Pyro he obligated Favrot to pay Pyro anything in event Pyro was low bidder and was not awarded the subcontract. He answered: “Not any whatever. None whatever.”
In plaintiffs’ several petitions Pyro made alternative claims on the basis of quasi contract and quantum meruit. In counsels’ brief it is stated that Pyro rests its case on the contention that there was a contract between Pyro and Favrot which was breached by Favrot. We understand that declaration in the brief to be an abandonment of the alternative claims. However, our conclusion that there was no contract makes the nature of the claims unimportant.
Pyro admits that it received from the city engineer a bid proposal which contains a bold provision printed in red ink that: “The City of New Orleans reserves the right to reject any and all bids and to waive any and all informalities in the best interest of the city.”
And Pyro also received a copy of the specifications in which the followng stipu-laton is included on page 9:

“SUB-CONTRACTS:

“No part of this contract shall be sublet without the prior written approval of the City. If the contractor shall sublet any part of this contract, the contractor shall be as fully responsible to the City for the acts and omissions of his sub-contractor and of the persons either directly or indirectly employed by his sub-contractor, as he is for the acts and omissions of persons directly employed by himself. Sub-contractors shall be acceptable to the City.”
See Home Rule Charter of New Orleans and LSA-R.S. 38:2212.
Therefore, in submitting its bid to Fav-rot for a phase of this job, being a concern with many years of experience in the construction industry, Pyro must be' held to have known that the final determination, as to whom the general contract would be awarded and which of the general contractors’ subcontractors would be approved, would be in the discretion of the City of New Orleans and that any such agreement made by Favrot to award a subcontract to Pyro might not be approved by the city. Walker v. Air Conditioning Distributors, Inc., 242 La. 653, 138 So.2d 7.
*360 Counsel complains bitterly about the illegality of the city rejecting Pyro’s low bid on item 3 and accepting Plibrico’s higher bid, and he cites authorities which counsel says support that complaint. The fact is that the city did not reject Pyro’s bid to Favrot. The bid was not made to the city. The city merely disapproved Pyro' as a subcontractor, regardless of his bid to Favrot. The city did not accept Plibrico-’s bid to the city on item 3 because that item was included in Favrot’s general contract. Counsel answers the- point that if Favrot did not agree to accept Plibrico- as its subcontractor on item 3 at the request of the city, then Favrot, as a low bidder, could lose the general contract by the city’s refusal to award it to Favrot, by arguing that it is unlawful for the city to reject the low bid of a responsible bidder and award the contract to a higher bidder. He argues further that in order to prevent the city from doing that Favrot could have enjoined the city from awarding the contract to-a higher bidder. All that argument may be true, but it is likewise true that the city could reject all bids and readvertise, or the city could have accepted individually the low bidders on the separate items making up the whole works and thereby reject all other bids including that of Favrot. Actually the total of the low bids on the separate items was less than Favrot bid for the whole job. In either case Pyro and Favrot both would have been thrown out. The city informed Favrot that the city wanted Plibrico to be given the subcontract to construct item 3 and if Favrot would not agree to- give that subcontract to Plibrico-, the city would not award the general contract to- Favrot. If the city were not justified in its position o-r if it violated the law, plaintiffs’ claim should have been made against the city not against Favrot. The city’s refusal to- accept the lowest bid would have been neither arbitrary nor unjustified. W. R. Aldrich & Co. v. Gravity Drainage District No. 1 of Rapides Parish, 238 La. 190, 114 So.2d 860.
Favrot actually wanted to have Pyro as its subcontractor on item 3, and we are convinced from the evidence that Favrot exerted every reasonable effort to induce the city to approve Pyro- as a subcontractor but the city was adamant in its refusal. We believe the city’s refusal was for a very good reaso-n, if it needed any. The reason was that Pyro had no staff or facility in New Orleans to service or repair the utility in the event of a breakdown and Plibrico did have such facility here. The city engineer explained that the city previously had unfortunate experience in just such a situation with respect to other concerns on other jobs. It was shown that in the event of breakdown prompt service is important. Plibrico was equally as responsible and knowledgeable in that field as Pyro, with the added advantage of being able to service or repair the utility promptly.
Under the provisions of the Home Rule Charter of New Orleans, the bid proposal, the stipulation in the specifications relating to subcontracts, and the law of this state, Favrot’s intention or its expression, if it made any, to give Pyro the subcontract was impliedly conditioned on the city’s approval of Pyro as a subcontractor. Detroit Football Company v. Robinson, D.C., 186 F.Supp. 933.
There was no contract between Pyro and Favrot and no joint venture and the defendant does not owe the plaintiffs anything for any reason.
The defendant filed an exception to the procedural capacity of Pyro which, after trial, was overruled by the judgment. In view of our conclusion to affirm the judgment, it is not necessary to discuss or pass upon the exception to Pyro’s procedural capacity.
The judgment appealed from is affirmed, the costs to* be paid by the plaintiffs.
Affirmed.