357 So.2d 102 (1978)
SOUTHERN TOURS, INC.
v.
NEW ORLEANS AVIATION BOARD, Paul J. Stoulig, Jerome S. Glazer, Nolan A. Marshall, Robert L'Hoste, James M. Trotter, III, Henry J. Friloux, Jr., Phyllis Landrieu, Lane Meltzer and Richard J. Kernion.
No. 9097.
Court of Appeal of Louisiana, Fourth Circuit.
March 20, 1978.
Rehearing Denied April 11, 1978.
Writ Refused June 2, 1978.
*103 Peter J. Casano and Lankford, Schneider & Lankford, John G. Lankford, New Orleans, for plaintiff-appellant.
Stone, Pigman, Walther, Wittmann & Hutchinson, Phillip A. Wittmann, Walter B. Stuart, IV, and Paul L. Zimmering, New Orleans, for defendants-appellees.
Lemle, Kelleher, Kohlmeyer & Matthews, James A. Churchill, Earl S. Eichin, Jr., and Ralph S. Hubbard, New Orleans, for Orleans Transp. Service, Inc., intervenor-appellee.
Before LEMMON, BOUTALL and GARSAUD, JJ.
LEMMON, Judge.
This suit involves bidding on a contract to provide ground transportation for air passengers from New Orleans International Airport to destinations in the metropolitan area. Southern Tours, Inc. (Southern) has appealed from a judgment refusing (1) to award the contract to Southern pursuant to bids of May 26, 1977 and (2) to enjoin offering the contract for rebidding.
Facts
On April 26, 1977 the New Orleans Aviation Board published an invitation for bidding on a 10-year contract for the ground transportation, in anticipation of the existing contract with Orleans Transportation Service, Inc. (Orleans) expiring on August 15, 1977. Under the proposal a bidder was required to submit an annual minimum guarantee and to agree to pay the Board that amount or 10% of gross revenue (total fare collections minus taxes), whichever was greater.[1]
On May 26, 1977 the Board opened the only two bids, one from Orleans with a total minimum guarantee over ten years of $2,427,300.00 and one from Southern with a proposed guarantee of $2,450,000.00. The Board then appointed a committee to study the bids and the qualification of the bidders.
On June 22, 1977 the Board held a hearing attended by the bidders and then adopted a resolution recommending to the New Orleans City Council that Orleans' bid be accepted, because of the slight monetary difference in the bids and of the Board's experience with Orleans' operations.
On July 21, 1977 the City Council considered a motion to concur in the Board's recommendation that the contract be awarded to Orleans, but the vote on the motion resulted in a tie. On July 28, 1977 the Council acted on a substitute motion and adopted, by a four-to-three vote, a resolution finding Southern had submitted the highest responsible bid and purporting to award the contract to Southern.
At its August 3, 1977 meeting the Board concluded that the Council's action merely constituted a disapproval of its recommendation. *104 Because various Councilmen had expressed general dissatisfaction with the terms and specifications of the bid proposal, the Board authorized the special committee to review the possibility of substantial changes which, if deemed necessary, could constitute cause for advertisement of invitations to bid according to a revised bid proposal.
Southern thereafter filed this suit to enjoin the Board from offering the contract for rebidding and to obtain an order that the contract be awarded to Southern in accordance with the action of the Council. Orleans intervened, opposing the relief requested by Southern. After trial of the matter on stipulations and documents, the court dismissed the suit, and Southern appealed.[2]
Validity of City Council Action
The trial court held that the Council's action purporting to award the contract to Southern was null and void, since the Council's authority was limited to approving or disapproving the Board's recommendations.
The authority of the Board and the Council is expressly stated in La.Const.1921, Art. 14, § 31.6(D), continued as a statute pursuant to La.Const.1974, Art. 14, § 16(A)(1), as follows:

"The City of New Orleans, acting by and through the New Orleans Aviation Board, with the approval of the City Council, is empowered to, and shall, impose, charge and collect, rates, fees, rentals and other charges for the use of the said Moisant International Airport and of the facilities constructed pursuant to this Section, in such amounts as will be sufficient at least to provide revenues adequate to maintain and operate the said Airport and facilities heretofore or hereafter constructed, to pay the principal of and interest on and premiums, if any, upon redemption of such obligations, to provide for the renewal and replacement of any or all of the Airport facilities and adequate reserves for all of such purposes, and for that purpose may contract for the operation of the said Moisant International Airport or lease all or any part thereof, to any person or corporation, public or private, upon such terms and conditions and for such period of years as the New Orleans Aviation Board may deem advisable, after having received the approval of the City Council." (Emphasis supplied)
Under the procedure outlined in this statute the Board determines the terms and conditions of a proposed contract, obtains Council approval, and then executes the contract on behalf of the City.
In the present case the Council, in considering the exercise of its authority to approve the proposed contract with Orleans, had no authority under the statute to award the contract to another bidder, and if this statute is controlling, the Council's action must be construed merely as disapproval of the Board's recommendation.
Citing La.Const.1974, Art. 6, § 15, as authority for the proposition that the Council has general power over the Board, Southern argues that in cases of conflict between the powers of the Board and the Council, the Board's power must yield to that of the Council.[3] In response to the contention that Art. 6, § 15 does not apply because the Council did not create this board, Southern points out that the Board was originally created by C.C.S., Ord. No. 15,839 in 1943 and that M.C.S., Ord. No. 1841, § 1 [which predates La.Const.1921, Art. 14, § 31.6(D)], adopted in 1960, created the Board in its present form.[4]
*105 Despite the wording of M.C.S., Ord. No. 1841, § 1, we conclude the present Board was created as part of the executive branch in 1954 when the citizens of the city adopted the Home Rule Charter, specifically Article 5, Chapter 7.[5] Although the 1960 ordinance purported to create the Board, the existence of the Board was derived from the Home Rule Charter, which cannot be amended or modified by Council ordinance. Thus, the Board is not an agency created by the Council and certainly not wholly created by the Council. Accordingly, the Board's powers as an arm of the executive branch, derived from the Home Rule Charter and from the Legislature, cannot be taken away by the Council.
We conclude that La.Const.1974, Art. 6, § 15 is inapplicable by its terms.
Board's Right to Readvertise
Citing Gurtler, Hebert & Co. v. Orleans Parish School Bd., 251 So.2d 51 (La.App. 4th Cir. 1971), Southern contends that once the Board chose to recommend awarding the bid to Orleans, it lost the right to reject all bids and to readvertise for new bids.
We distinguish the Gurtler case on its facts. In that case defendant passed over plaintiff's low bid (which in terms of money was the most favorable bid) and accepted the next lowest bid as the lowest responsible bid. In the ensuing litigation the trial court found that plaintiff was a responsible bidder and enjoined defendant from awarding the contract to the second lowest bidder. Thereafter, defendant sought to readvertise bidding for the same work on substantially the same basis. On appeal from a refusal to allow readvertising, this court held that if the agency were allowed to arbitrarily reject plaintiff's bid under those circumstances, the purpose of competitive bidding would be defeated. In the absence of a showing of a substantial reason to reject all bids after finding one acceptable, the agency was presumed to have exercised favoritism to plaintiff's detriment.
The circumstances are different in the present case. At the two extensive hearings before the Council, after the Board had chosen to accept Orleans' bid subject to Council approval,[6] many objections were raised to the terms and specifications of the bid proposal. One councilman objected to the length of the term; another objected to the fixed percentage of gross revenue and suggested that subjecting the percentage to competitive bidding might achieve a higher percentage; another observed that the contractor (and others) providing service to the airport should be required to pay a percentage of those fares;while *106 another suggested a provision for annual inspection and for the right to require repairs or replacement.
Thereafter, the special committee reviewed the bid proposal and suggested provisions (1) shortening the term and including an option to renew in favor of the Board; (2) permitting competitive bidding on the percentage of gross revenues; (3) permitting annual adjustment of the minimum guarantee based on contract performance in prior years; (4) requiring the contractor and others to pay a percentage of fares to the airport; (5) requiring annual inspection and permitting the Board to require repair or replacement of defective equipment; and (6) changing the minimum experience requirement.
There is sufficient evidence in this record to support a conclusion that the Board, on the basis that the Council expressed general dissatisfaction primarily with the bid proposal and not with either bidder, reasonably exercised its discretion to reject all bids and to readvertise for new bidding in accordance with a substantially revised bid proposal, designed to achieve a benefit for the public and not simply to accord a second opportunity to a favored bidder.[7]
Disposition of Southern's Original Bid
Southern contends that its bid, never having been rejected, must now be accepted. We have concluded that all bids were rejected in the decision to readvertise, and since that decision was found to be not primarily for the purpose of evading the bidding law, acceptance of Southern's bid cannot be compelled.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Thus, in terms of money only, the bid most favorable to the Board was that of the highest bidder.

However, the bid proposal contained the following additional provisions:
"The right is reserved by the Board to waive any irregularities or informalities in any proposal, to reject any or all proposals or re-advertise for proposals if desired, and to accept the proposal which, in the judgment of the Board, even though it does not offer the highest annual guarantee of direct financial return, is nevertheless deemed the most advantageous for the public and the Board.
* * * * * *
"The Board reserves the right to investigate thoroughly the finances, character, experience and record of each applicant and the final award will be based upon the comparative qualities above mentioned, as well as the provisions quoted in the applicant's proposal."
[2] The trial court did enjoin the Board from awarding the contract to Orleans pursuant to the April, 1977 bid without the approval of the City Council. Pending this appeal Orleans is providing ground transportation on a month-to-month basis pursuant to the old contract.
[3] La.Const.1974, Art. 6, § 15 provides:

"The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency."
[4] M.C.S., Ord. No. 1841, § 1 provides:

"There is hereby created a municipal board to be known as the New Orleans Aviation Board, which shall be so constituted and have such powers, duties and functions as set forth in this article. The New Orleans Aviation Board shall consist of five members to be appointed by the Mayor, with the approval of the Council, for terms of five years, so arranged that the term of one member shall expire each year."
[5] Chapter 7 of the Home Rule Charter, entitled New Orleans Aviation Board, provides:

"SECTION 5-701. COMPOSITION. The New Orleans Aviation Board shall consist of five members to be appointed by the Mayor with the approval of the Council for terms of five years, so arranged that the term of one member shall expire each year.
"SECTION 5-702. FUNCTIONS. The Board shall:
"(1) Administer, operate and maintain all municipal airports and aviation facilities.
"(2) Represent the City in all technical matters pertaining to aeronautics in consultation with state, national or international aeronautics officers or agencies.
"SECTION 5-703. AVIATION DIRECTOR. The Board may appoint an Aviation Director who shall serve at its pleasure and who shall be the executive officer of the Board."
[6] We are not impressed with the Board's argument that it had the right to reject Southern's original bid and order rebidding because no original bid was ever accepted. If the Board, after recommending acceptance of Orleans' bid and failing to obtain Council approval, had decided to readvertise the same contract for rebidding without any substantial reason for doing so, we would be reluctant to affirm such arbitrary and capricious action. A public body cannot exercise its discretion to reject any and all bids arbitrarily or capriciously for the purpose of evading the bidding law, but must exercise its discretionary power in good faith and without favoritism, which competitive bidding is designed to prevent.
[7] The trial judge noted that the Council's deliberations suggested that "major aspects of the bid proposal . . . are in need of revision". Indeed, several Councilmen suggested revision and rebidding.