COLE, Judge.
Plaintiff appeals from the judgment of the district court denying his request for a preliminary injunction and dismissing his suit.
We quote with approval the following portions of the trial court’s written reasons for judgment:
“STATEMENT OF FACTS
“The State of Louisiana, on behalf of the Office of Family Security of the Department of Health and Human Resources, ad *370 vertised for public bids on the lease of office space in Jonesville, Louisiana. The advertisement appeared on February 15, 1979. The advertisement specified that the space offered should contain a minimum of 3,400 square feet and a maximum of 3,600 square feet, and contained certain building specifications. It also provided: ‘The right is reserved to reject any and all bids and to waive any informalities.’ Interested bidders were directed to submit bids to the appropriate officer by March 9, 1979.
“Four bids were received in response to the advertisement. Two of these bids would ultimately become the subject of the current controversy. One bid was submitted by a Mrs. Ruth Matthews, who bid $2.00 per square foot on a 2,803-square-foot space. Another was the bid of the present plaintiff, who bid $8.45 per square foot on a building to be built, within the proper maximum and minimum square footage advertised. If Mrs. Matthews’ bid is not considered, Dr. Coney’s bid was the lowest of the remaining three bids.
“By letter dated March 23, 1979, the Division of Administration (after receiving the initial approval of the Office of Family Security, the prospective tenant) sent to plaintiff a proposed lease agreement and accompanying affidavit. That letter stated: ‘If the lease meets with your approval, please execute all copies of the lease and affidavit and return them to this office for further processing and distribution.’
“Plaintiff complied with that request, returning the documents on April 6, 1979. The Division of Administration forwarded this lease (now signed by Dr. Coney, the plaintiff) to the prospective tenant. It was returned on April 18,1979 with an authorized signature for that tenant. The Division of Administration proceeded to request budget approval that monies were available to lease the building. This approval was received on May 30, 1979. But the lease document was never signed by the appropriate official of the Division of Administration.
“On May 31, 1979, plaintiff received a telephone call from the Division of Administration and a subsequent confirming letter that all bids on the project were being rejected. Thereafter, the proposed lease agreement was re-advertised and re-bid. This time, Mrs. Matthews bid $8.00 per square foot on square footage within the proper maximum and minimum, and plaintiff re-bid $8.45 per square foot, as he had before.
“On the day before the second bid opening, plaintiff brought the present law suit, seeking to enjoin the State of Louisiana from entering into a contract of lease for the advertised space with anyone but plaintiff. A temporary restraining order was sought, but denied. A preliminary injunction was sought, and a rule issued to compel the defendant State of Louisiana to show cause why the preliminary injunction should not issue. That rule was tried on July 6, 1979; the evidence was transcribed; briefs were submitted; and the matter is before the Court for decision.

“Conclusions of Law

“There are no genuine disputes about the foregoing facts. But the conclusions of law to be drawn from those facts are of course in dispute. For the reasons that follow, the Court concludes that the State of Louisiana had the right to reject all bids under the circumstances. It follows from that conclusion that plaintiff is not entitled to the relief he seeks, and his petition for a preliminary injunction is dismissed at his cost.
“The Louisiana statutes applicable to the bidding procedure provide:

La.R.S. 39:195:

‘No state agency shall enter into a lease as lessee for the use of 2,500 square feet or more of space in a privately owned building except upon advertisement for such space in the same manner established by this Part for commodity purchases, the notification of space needs to all interested providers, the receipt of competitive bids and awards to the lowest bidder meeting specifications.’
(Added by Acts 1978, No. 676.)
The provisions for commodity purchases, to which the statute refers are:

La.R.S. 29:171.1(A) [39:171.1(A)]:

*371 ‘Whenever, in the opinion of the Commission of Administration, the best interests of the state will be best served by the purchase of any commodity or class of commodity in quantity and covered by a contract let for the purpose, the commissioner shall enter into a contract for such commodity or class of commodity. .
******

La.R.S. 39:181:

‘Contracts may be awarded for separate items, or portions or groups of items as the best interest of the state may require. If no satisfactory bid has been received in any case, the Division of Administration may reject all bids and forthwith may advertise for new bids.

These specific provisions with reference to lease of space of 2,500 square feet or more are very similar to the general provisions in La.R.S. 38:2212 and 38:2214 with reference to the letting of contracts for the purchase of materials or supplies, or the construction of public works. The latter statute contains the specific statement that ‘. The public entity may reject any and all bids.’
“In the present instance, both the advertisement and the notice to bidders contained the statement that ‘the right is reserved to reject any and all bids. . . . ’ That this statement was included is not contested by plaintiff.
“Able counsel for plaintiff urges upon the court either of two conclusions: (1) that a contract of lease was confected between plaintiff and the State; or (2) if it was not, the State’s rejection of all bids was arbitrary and illegal, and a contract of lease should now be entered into with the plaintiff.
“The Court cannot agree with the first argument. La.R.S. 39:171.1(A) and 39:193 vest only the Commissioner of Administration with authority to enter into a contract for the purchase of commodities (and by reference, for a lease such as this one, La.R.S. 39:195).[1] The Commissioner of Administration did not sign the lease agreement, nor did anyone authorized by him do so. There is no evidence of an oral agreement on the part of the Commissioner, even if that would be permissible under the statutes. Plaintiff has simply failed to establish that there ever was a valid lease agreement.
“The second argument is more plausible, but still without merit. Plaintiff’s contention seems to have two aspects. The first is that the statutes themselves limit the power of the State to reject all bids by stating that ‘if no satisfactory bid has been received in any case,’ bids may be rejected. The second is that, even if the statutes do not impose such a restriction, the jurisprudence has done so by refusing to permit arbitrary rejection of all bids.
“As to the first, some examination of the history of the statutes is in order. The original predecessor provision of the present La.R.S. 39:181 (right to reject all bids) was Acts 1942, No. Ill, Title 9, § 7. Act 111 was a comprehensive fiscal code, establishing the Department of Finance and providing for central purchasing, among other things. The specific provision which ultimately became the present R.S. 39:181 read: ‘. . . If, in the judgment of the Purchasing Office no satisfactory bid has been received in any case, he may reject all bids. . . ’ Acts 1948, No. 133, Title 6, § 4, again a comprehensive measure, placed that judgment power in the individual budget units: ‘. . . If no satisfactory bid has been received in any case, the budget unit may reject all bids. . . . ’ When the judgment power was again placed in the Division of Administration, the phrase ‘budget unit’ was replaced with the phrase ‘Division of Administration.’ Unless this provision limits the power of the Division to reject all bids, it is not otherwise limited. The advertisement and bidding documents contain no limitations.
*372 “Plaintiff argues that the above language prohibits a reservation of right to reject all bids without qualification. This puts a strained interpretation upon the statute. The judgment that a bid is satisfactory must be made by someone. If there is no judgment to be made, and if only a mechanical application of other statutory provisions is necessary to determine whether a bid is satisfactory, then the language is superfluous. Language in a statute should be interpreted, if at all possible, so as to give it meaning rather than make it superfluous. Moreover, the argument that the Commissioner of Administration is without discretion of some type to reach a decision on the satisfactory nature of a bid is inconsistent with the responsibility placed upon him in La.R.S. 39:171.1(A) that he act ‘in the best interests of the state.’ The purpose of public bidding statutes is to obtain the best possible product at the least expense to the public, under all the circumstances prevailing. The protection of the public fisc which is entrusted to the Commissioner of Administration is an important responsibility, and the Court is reluctant to interpret a single phrase in the statute so as to limit his discretion in carrying out that responsibility.
“But, regardless of the interpretation placed on the phrase, the Court does not agree with plaintiff that it forbids the Commissioner from stating in the bidding documents that he reserves the right to reject all bids. He could, and apparently did, state the terms under which the bid was to be made. La.Civ.Code Art. 1764. Plaintiff concedes that he understood those terms, and made his bid in accordance with them. The statute would no doubt authorize the Commissioner to reject bids even if he did not place such a statement in the bidding documents. But the statute does not go so far as to prohibit the exercise of his discretion in rejecting all bids as unsatisfactory.
“The importance of the protection of the public fisc, made clear by a reading of the entire statute dealing with public bidding, compels the court to conclude that the Commissioner has the power to determine which, if any, of the bids are satisfactory and to reject all of them if he determines that all are unsatisfactory under the prevailing circumstances. This discretionary power is limited only by the jurisprudential requirement that he reach this conclusion in a non-arbitrary manner, for valid reasons.
“To that limited extent, the Court agrees with plaintiff that the jurisprudence has limited the Commissioner’s discretionary power. But there has been no showing of arbitrariness in the present case. In support of his argument of arbitrariness, plaintiff cites Disposal Systems, Inc. v. Calcasieu Parish School Board, 243 So.2d 915 (La.App. 3d Cir. 1971) and Gurtler, Hebert & Co. v. Orleans Parish School Board, 251 So.2d 51 (La.App. 4th Cir. 1971). Neither appears apposite to the present case. The first case involved an actual award of a contract to a bidder by vote of the school board, subject only to the condition that the local district attorney render a legal opinion as to a possible conflict with other contracts. That condition was subsequently fulfilled. The ‘award’ of the contract in the present case can be completed only by approval of the Commissioner of Administration or his des-ignee, and that approval has never been given. Plaintiff errs in asserting that ‘the contractual relationship is complete.’
“The second case, Gurtier, requires more extended comment. The Orleans Parish School Board had advertised for bids for the installation of incinerators at various schools. When the bids were opened, plaintiff Gurtier was determined to be the low bidder. But at its subsequent meeting, the school board followed the recommendation of its consulting engineer on the project and rejected that bid as not the lowest responsible bid and awarded the contract to the second lowest bidder. This award was by a 3-1 vote of the school board. When that award was made, the disappointed bidder brought suit against the school board seeking a preliminary injunction to enjoin the school board from entering into a contract with the second lowest bidder, and to mandate that the school board enter into a *373 contract with the disappointed bidder. Ultimately, the trial court granted such an injunction, on the basis that the school board acted in an arbitrary manner. That finding was never appealed, and became final and conclusive.
“Thereafter, the school board decided to reject all bids that had been submitted and re-advertise the project. When the disappointed bidder complained of that course of action, the school board instituted a summary proceeding to determine whether its rejection of bids and re-advertisement would constitute a violation of the preliminary injunction, which of course was still in effect. The trial court determined that rejection would violate the injunction and the school board appealed. That appeal is the Gurtler case on which plaintiff relies in the present litigation.
“The Gurtler case has been described at some length to demonstrate that it is a decision in which the court of appeal was called upon to determine whether a public body which had arbitrarily (as a conclusive matter of law upon that appeal) rejected the lowest bid and accepted another and was then enjoined, could reject all bids without violating the injunction. This makes the Gurtler case entirely distinguishable from the present litigation. In the first place, the State of Louisiana was under no injunction when it rejected all bids. In the second place, no contract has been entered into with another bidder. And finally, the State has not been conclusively determined to be arbitrary in rejecting all bids.
“The court in Gurtler conceded that authority for its holding was scarce, but cited a paragraph from McQuillin on Municipal Corporations, Vol. 10, Sec. 29177, pp. 438-439 (erroneously spelled as McQuillian by the court). This paragraph concerned limitations on the right to reject bids, stating that courts had recognized such limitations when the public officers act arbitrarily or capriciously. On the record before the appellate court, it had no choice but to use such authority, since the finding of arbitrariness was final and binding. But the preceding material in McQuillin in the same section is quite illustrative and more applicable to the present situation, in which arbitrariness is not established.
‘If the authorities are so empowered, they may reject all bids. In such case the lowest bidder does not obtain a vested or property interest in the contract merely by reason of the fact that he submitted the lowest bid. The awarding agency may thereupon proceed anew with the letting of the contract. If the grant of power to the municipal officers authorizes the rejection of any bid, the contract need not be let to the lowest bidder, and the fact that it is not so let does not indicate fraud. Where discretion is conferred to reject ‘any and all bids,’ the courts will not interfere with the discretion unless exercised with a fraudulent intent, to the injury of the party complaining, and where the injury is to a vested right.’
“Plaintiff’s able counsel is wise to attempt to align the present litigation with the Gurtler opinion. It appears to be the only deviation in the jurisprudence from the general proposition that a public entity has the right to reject any and all bids. Southern Tours v. New Orleans Aviation Board, 357 So.2d 102 (La.App. 4th Cir. 1978); D. J. Talley & Son, Inc. v. City of New Orleans, 303 So.2d 195 (La.App. 4th Cir. 1975); Pyro Incinerator & Sup. Corp. v. Gervais F. Favrot Co., 210 So.2d 356 (La.App. 4th Cir. 1968); Bartley, Inc. v. Town of Westlake, 237 La. 413, 111 So.2d 328 (1959). That the Gurtler decision is a deviation appears from the fact that it has never subsequently been cited with approval, and in fact has been cited once by the same court that decided it for its ‘dictum’ that the right of the public board to reject all bids must be acknowledged. Foti v. Orleans Parish School Board, 358 So.2d 353 (La.App. 4th Cir. 1978).
******

“Arbitrariness Vel Non

“As noted earlier, the only limitation even arguably applicable to the power to reject all bids is that enunciated by the *374 court of appeal in Gurtler, and it clearly depends upon establishment of arbitrary rejection of one bid and acceptance of another. The Court finds nothing in the evidence that establishes arbitrariness in the decision to reject all bids.
“What the record does reveal is an apparent discrepancy of considerable proportion among the bidders. One bidder (Mrs. Matthews) made an attractive bid so far as the per-square-foot price was concerned ($2.00, including utilities), but under-bid the minimum square footage by a considerable margin (offering only some 2,800 square feet when the advertisement specified 3,400 square feet minimum). Another bidder (plaintiff) was within the proper square footage, but at a price of $8.45 per square foot. The evidence does not reflect the other two bids, but does reflect that plaintiff’s would have been the lowest among them. Accordingly, one may conclude that the three bids other than Mrs. Matthews’ were in the range of $8.45 per square foot and higher.
“In the face of this wide discrepancy in the bids, and in the light of the fact that Mrs. Matthews’ bid was for an existing building ready for occupancy, the Court cannot conclude that the Division of Administration was arbitrary and unreasonable in ascertaining whether some middle ground was available between the two extremes upon first bidding. The Commissioner of Administration and his designees are required to act in the best interests of the state, by statute, and it is presumed that they have done their duty in a proper manner. La.R.S. 15:432. Plaintiff has not overcome this presumption.
“Defendant asserts in its brief (but the record does not reflect) that the previous lease to the agency in question was from Mrs. Matthews, for the same building, at $1.71 per square foot. If this is the case, and if Mrs. Matthews’ original bid had to be rejected as not within the minimum space requirements, the Division of Administration was left with three bids, all of which were approximately five times the rental on the contract just coming to an end. Rejection of such bids in an effort to achieve the lowest possible price for the public fisc does not appear to be arbitrary or unreasonable. And if it were, plaintiff had ample opportunity to establish a record which would demonstrate that, but failed to do so.
“Moreover, on the day after the Division of Administration received notice that the funds would be available to lease at $8.45 per square foot [if] it approved the lease contract, it received a letter from the tenant agency asking that the project be re-bid ‘. . .in hopes of retaining [sic] a lower responsible bid.’ Why this request was made by the tenant agency, the evidence does not reveal. But regardless of the reason, the Division of Administration’s response does not seem arbitrary. It had not yet approved the lease contract. The prospective lessee requested a re-bid in an effort to save money. The first acceptable bids may have been five times the previous lease amount. Under those circumstances, there is no proof of arbitrariness.
“The Court is compelled to conclude that plaintiff has not established arbitrariness on the part of the Division of Administration.”
For the reasons given by the trial court, we affirm the judgment appealed. Costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.

. We note La.R.S. 39:193 deals specifically with the lease or rental of space for the housing of state agencies, not with commodities, and does, in fact, provide that such leases “shall be made and entered into only with the approval of the commissioner of administration.”